# PATTERSON *vs.* RAMSPECK & GREEN.

1. A note for commercial manures reciting that the manure had the guaranteed analysis on each sack, and that the payee purchased on on his own judgment, and waiving all guarantee as to effect on crops, was evidently intended to speak the whole contract as to what was the guaranteed analysis. It was, therefore, not error to reject alleged representations made by the agent selling the fertilizer as to the grade and chemical ingredients of the same. Code, §§2757, 3800; 62 *Ga.* 617.

(*a*) If the representations were made from the analysis in the printed circular furnished the agent by his principal, the circular itself should have been produced or explanation made of the failure to do so, before evidence of its contents would be admissible.

2. Hearsay and uncertain testimony as to analyses made by the State chemist, and as to dissatisfaction given by the fertilizer to others, their refusal to pay for it, etc., was properly excluded.

3. To authorize the grant of a new trial for excluding evidence, it must be clearly shown that the testimony offered would elucidate some issue made and was legally admissible for that purpose.

(*a*) If a witness derived information that the fertilizer sold did not come up to the required analysis from an analysis made by himself of the guano sold, his testimony upon the point would be admissible; but if based on information from others, or from its effects on crops, it should have been excluded. 64 *Ga.* 94; 62 *Id.* 617.

4. A plea which set up that defendant was to have the privilege of paying the debt in a manner not stipulated in the original contract, and that pursuant to this agreement he paid a part and was to pay the balance afterwards, but which did not aver that plaintiffs obtained any advantage by this agreement, or that defendant gave any new consideration or additional security or executed the agreement by paying the amount agreed on, should have been stricken, and all the evidence introduced under it excluded. Code, §§2880, 2881.

July 12, 1888.

Evidence. Promissory notes. Commercial fertilizers. Analysis. Pleadings. Contracts. Consideration. Before Judge SIMMONS. Bibb superior court. April term, 1887.

Ramspeck & Green sued R. M. Patterson on a prom-

issory note, dated March 27, 1883, due on or before October 15, 1883, for $264, " for four tons of commercial manure, known as 'Gilt Edge,' which has the guaran-. teed analysis on each sack, and properly tagged as re-' quired by law, and which I have purchased on my judg-. ment, waiving all guarantee as to its effects on crops, which said obligation may be discharged in middling cotton, or any grade on basis of middling, in merchanta-- ble bales, at nearest railroad depot, at fifteen cents per pound, if delivered at or before maturity of note." The note also contains agreement to pay attorneys' fees and costs, waiver of exemption, etc.

The defendant pleaded (1) the general issue ; (2) that the consideration of the note had failed, because the guano was sold as being a very superior article, according to an analysis made by the commissioner of agriculture, when in fact it did not come up to the analysis, was not tagged and inspected according to law, and was utterly worthless, in that plaintiffs represented that the guano contained ten per cent. of available phosphoric acid, whereas it contained only 7.24 per cent. ; (3) that before he learned that plaintiffs had sold him a guano different from that which they had had inspected, and had thus wilfully committed a fraud on him, he paid them————dollars, which he pleads as a set-off, etc. ; (4) that subsequently it was agreed that he should pay the note, in cotton option, in cotton at fifteen cents per pound for middling cotton, that he paid $136 in pursuance of said agreement, and that the remainder of the note was to be paid, with eight per cent. interest, without attorney's fees. The fourth plea was subsequently stricken under circumstances which will hereafter appear.

' On the trial, the plaintiffs introduced the note and closed. Defendant proved by himself, his son R. W.

Patterson, and H. A. Mathews, that he had paid to Mathews $136 on this note in three bales of cotton, and that when this payment was made, it was agreed between defendant and Mathews (who was acting as attorney for plaintiffs in collecting the note) that defendant was to pay the balance due thereon as set forth in the plea which was stricken, and that the payment was to be made in the fall of 1884. The defendant also swore that he did not himself see his crop of cotton on which this guano was used; did not know whether the guano was branded or tagged, or not. Mathews swore that he thought nothing was said in any correspondence about cotton option before the payment of the $136. The defendant also introduced a certificate of inspection of gilt edge guano, showing available phosphoric acid 7.24; also a certificate of the commissioner of agriculture, stating that the analysis last mentioned showed the analysis by the department of the fertilizer in question for the season of 1882–3, and that subsequent re-inspections and analyses of this brand in the hands of retailers showed a material falling off in quality, but not so as to reduce it below the standard, except in one instance.

The jury found for the plaintiffs $128 principal, with interest and attorneys' fees. The defendant moved for a new trial on the following grounds:

(1–2) Verdict contrary to law and evidence.

(3) The court ruled out the following evidence of one Anderson: "I represented to Dr. R. M. Patterson the gilt edge guano as a high grade fertilizer— as containing ten per cent. of available phosphoric acid. I did so from the analysis in the printed circular furnished to their agents by plaintiffs in said case, and also from a personal conversation with a member of the firm of Ramspeck & Green, who au-

.thorized us to guarantee that analysis to our cus-
tomers. It turned out, after the sale to plaintiffs,
that said gilt edge fertilizer was analyzed several times,
three or four times say, by the State chemist, and it
varied from five to ten per cent. available phosphoric
acid, the most valuable ingredient contained in it. It
proved very unsatisfactory to our customers; a few of
them paid for the gilt edge guano we sold them that
year (1883), but did so under protest; all who con-
tested it got clear from paying for it, or settled at a
nominal price. I did not see this particular lot of
guano that we sold to defendant, as it was shipped
through to him, and I don't know whether it was
tagged and analyzed as required by law or not. I
used some of this same guano in 1883, and consider it
comparatively worthless. I have sold defendant guano
for the last twenty-eight or thirty years; during the
time he has bought various brands and perhaps several
hundred tons from me; and he never has failed or re-
fused to pay for any guano sold him before this lot. I
also saw the crop of defendant in 1883, upon which
this guano was used, and I could not see that this
guano benefited it, very little if any, while other
guanos used on the crops in the same field showed
marked results or benefit."

(4) The court refused to allow Anderson, Jr., to
answer the following question: "Did the guano sold
by you that year for Ramspeck & Green come up to
the required analysis?"

(5) The court refused to allow Patterson to answer
the following question: "What representations did he,
the agent from whom you bought this guano, make
to you at the time of purchase as to the quality of
the guano?" This evidence was offered under the
plea of failure of consideration.

(6) Near the close of the evidence, the court struck the fourth plea, heretofore set out, under the following circumstances: At the time the evidence of the Pattersons and Mathews was introduced, defendant's counsel stated that he would amend his plea so as to set up that, by a subsequent agreement, plaintiffs agreed to receive the cotton option after the note was due. Near the close of the testimony he did amend his plea, after the evidence had been received; whereupon the court struck the amended plea and withdrew the evidence from the jury.

(7) The court refused to allow defendant's counsel to prove, by W. A. Davis, the value of middling cotton on October 15, 1883; the evidence being offered for the purpose of showing the value of the note on a cotton option basis.

The motion was overruled, and defendant excepted.

R. W. PATTERSON, for plaintiff in error.

LYON & ESTES, contra.

BOYNTON, Judge.

The head-notes in this case are full and cover all the points in the record, and are quite as comprehensive as a longer opinion would be.

Judgment affirmed.