ZIPPERER *v.* DOYLE, survivor.

BECK, J. 1. A· plaintiff can not recover on an account for the sale of
fertilizer, made on February 12, 1902, if it be made to appear, by the
evidence, that the sacks containing the fertilizer were not tagged ac-
cording to law (*Holt* v. *Navassa Guano Co.*, 114 *Ga.* 668) ; and a charge
of the court excluding from the consideration of the jury any evidence
tending to show that they were not so tagged constitutes reversible error.

2. Under the rule, that "when the competency of a witness depends upon the
determination of a question of fact, the decision of the judge will not
generally be disturbed, if there is any evidence to authorize his finding"
(*Carroll* v. *Barber*, 119 *Ga.* 856, citing *Dowdy* v. *Watson*, 115 *Ga.* 42),
the ruling of the court below in excluding the testimony of the defendant
as to a conversation had with the deceased member of the plaintiff's firm,
alleged to have been heard by the surviving member who was at the
time engaged in writing at a desk in the same room, but who denied
having heard any such conversation, will not be interfered with.

3. No reversible error other than that indicated in the first headnote, was
committed, either in the charge to the jury or in the rulings of the court
upon the admissibility of evidence.

*Judgment reversed. All the Justices concur, except Atkinson, J., who
did not preside.*

Argued November 15, 1905.—Decided February 19, 1906.

Complaint. Before Judge Norwood. City court of Savannah.
July 21, 1905.

Simkins & Company, a firm composed of D. W. Simkins and
James A. Doyle, brought suit against Zipperer for $294.10, alleged
to be due as a balance on an open account, in which the defendant
was charged with fifteen tons of fertilizer and credited with sixty-
three bags of fertilizer returned. The defendant answered, deny-
ing indebtedness; and filed a plea of recoupment, in which it was
alleged, that he contracted with the plaintiffs for fifteen tons of
fertilizer, which they warranted to be of equal grade and as good
as certain fertilizer previously used by him, and that in buying it
he relied upon this warranty; that he afterwards sent his em-
ployees to the plaintiffs for the fertilizer, and the plaintiffs de-
livered to them fifteen tons, which the plaintiffs assured them were
of the quality, analysis, and productiveness contracted for by him;
and that his employees were distributing the fertilizer over one
of his bean fields, and had already placed on the ground eight tons
of it, when he first saw it; that he thereupon discovered that "the
fertilizer which plaintiffs had delivered and which was being dis-
tributed in the fields was not of the grade, quality, analysis, and

productiveness warranted, but, on the contrary, was refuse stock, of different grades and quality, the greater part of which was caked into chunks, and which [his] servants, in order that the same might be distributed into the field, had first emptied into barrels and pulverized with hammers;" and that he immediately returned to the plaintiffs the undistributed part, and planted the remainder of the field with fertilizer of the brand formerly used by him, distributing it in like proportion to that furnished by the plaintiffs and placed on the other part of the field; that the soil of both parts was of the same kind and quality; and that the result of his crop on the part on which the plaintiffs' fertilizer had been placed, measured by the yield of the land on which he used the other fertilizer, was short to the extent of at least 500 basketfuls of beans; being a loss in net profits, to the amount of $625; for which amount, less the $294.10 sued for, he prayed judgment. By amendment he averred that the fertilizer was "without tags on the sacks containing said fertilizer, as the law directs." It appearing to the court that D. W. Simkins had died, it was ordered that the suit proceed in the name of James A. Doyle, as surviving partner.

On the trial the evidence was conflicting. There was evidence for the defendant that the sacks containing the fertilizer were not tagged, and that it was in the caked condition described in the plea. The court refused to permit the defendant to testify that a warranty of the kind stated in his plea was made by Simkins, the deceased partner, in a conversation with the defendant in the presence of the-surviving partner, Doyle, who at the time was writing at a desk in the office where the conversation occurred. This testimony was excluded because Doyle had testified that he had no recollection of such a conversation. The defendant offered testimony in support of the averments of his plea as to the relative results obtained from the use of the plaintiffs' fertilizer and the other fertilizer mentioned, and offered other testimony for the purpose of showing that the plaintiffs' fertilizer was of inferior grade and not of the kind for which the defendant had contracted. This testimony was excluded, on objection, on the ground that it was irrelevant and "an improper way to attack the fertilizer." It appears that the sale of the fertilizer was made in 1902, prior to the date on which the act of December 18, 1901, as to such sales (Acts 1901, p. 65), went into effect.

The verdict was for the amount sued for. The defendant made a motion for a new trial, to the refusal of which he ·excepted; in which he alleged, that the verdict was contrary to law and the evidence; and that the court erred in excluding testimony as before stated, and in certain instructions to the jury, among which was an instruction to the effect that if the purchaser of fertilizer does not take samples and have an analysis made, he can not set up that the fertilizer was not what it was represented to be; and that "there being no analysis produced here by [the defendant], he can not defend himself upon the ground that this fertilizer was inferior to what he bought. He is bound by the analysis that was given to the seller at the time that he sold it. He might have proved that it was inferior. He has not done it, and that defense, therefore, is cut off, and he is bound to pay what he contracted to pay for the value of that fertilizer." It was alleged that this was error, because the act of December 27, 1890 (Political Code, §1570 et seq.), touching the preservation and analysis of samples of fertilizers, is cumulative only, and does not apply unless the parties to the sale elect to co-operate in depositing a sample with the ordinary; and because the charge was an expression of opinion on the evidence, · and precluded the jury from considering any defense, under the testimony which was permitted to go to them. The other instructions complained of related to the duty of a purchaser as to inspection and rejection of goods, one of them concluding as follows: "The question is, did he purchase the fertilizer? Did he use part of it? Did he agree to pay a certain amount for it? If so, he has to pay for it."

*Twiggs & Oliver,* for plaintiff in error, cited, as to competency to testify to transaction with decedent: Civil Code, §5269; *Ga. R.* 114/668-71; 115/43(4), 46; 86/17; 49/434; 41/123; Gr. Ev. (16th ed.) §429, p. 910; 3 Jones, Ev. §794. On other points, Pol. Code, §1563, Penal Code, §611; *Ga. R.* 94/14(1); 84/606; 80/418-19; 79/425; 71/161, 163; 67/512; 65/129, 131; 64/603; 63/215; 61/364, 368-9; 60/520; Civil Code, §§3555-60, 3021, 5331.

*Walter G. Charlton,* contra, cited *Ga. R.* 92/740(4); 106/332; 119/192; Civil Code, §1570 et seq.; *Ga. R.* 74/398; 83/32; 94/20; 108/615, 742; 78/633.