## PLANTERS FERTILIZER COMPANY *v.* WHEELER.

Under the act approved December 18, 1901 (Acts 1901, p. 65), embodied in the Code of 1910, a contract for the sale of commercial fertilizer is not illegal merely because the seller omits to attach tax tags, as provided for in the act, to the separate sacks in which the fertilizer is contained.

Accordingly, where, in a suit on a promissory note given for the purchase-price of fertilizer, the defendant admitted in his plea the execution of the note and assumed the burden of proof, he could not avoid a recovery merely by showing that tags were not attached to the separate parcels thereof.

JULY 23, 1914.

Complaint. Before Judge Hawkins. Johnson superior court. March 13, 1913.

The Planters Fertilizer Company brought an action on a promissory note against J. S. Wheeler. The defendant pleaded that the note was given for the purchase-price of certain fertilizer, and was void for the reason that the plaintiff did not comply with the law regulating the sale of fertilizers, in that the sacks in which the fertilizer was contained, while duly branded, were not tagged as required by law. The plaintiff obtained a verdict for a sum less than that which appeared to be due on the face of the note. The court refused to grant a new trial, and the plaintiff excepted.

*Faircloth & Claxton,* for plaintiff.

*E. L. Stephens,* for defendant.

ATKINSON, J. The only point made in the motion for new trial is that the verdict is without evidence to support it. In his plea the defendant admitted the execution of the note and that the plaintiff was the holder thereof, and assumed the burden of proof. He offered testimony tending to show that the consideration of the note was fertilizer, and that one of the cars of fertilizer, which was shipped from Tennille, Georgia, to him at Kite, Georgia, March 10, 1911, on being opened was discovered to have no tags attached to the sacks. The uncontradicted evidence was that the fertilizer had been duly registered, and there was no evidence that it had not been duly inspected. The sole reliance of the defense was upon the fact that the sacks did not have tags attached to them. Upon this question there was a conflict of evidence, but the verdict was with the defendant; and, on motion for new trial by the plaintiff, the question of law is made, does the statute condemn the sale of fertilizer merely because tags were not attached to the sacks, there being compliance with the law in all other respects? The sale was made in March, 1911, before the passage of the act approved August 22, 1911 (Acts 1911, p. 172). The law under which the question is to be decided is the act of 1901 (Acts 1901, p. 65), embodied in the Civil Code of 1910, §§ 1771-1772 et seq. This law provides

for the registration of brands and the analysis of fertilizers in the office of the commissioner of agriculture, and the names of the brands under which the fertilizers are to be sold. These are provisions for the protection of users of commercial fertilizers. Under the Civil Code, § 1793, provision is made under which manufacturers and manipulators, who have registered the brands, may forward to the commissioner of agriculture their requests for "tax tags," stating that they are to be used upon brands of fertilizer duly registered. The request is required to be accompanied with the sum of 10 cents per ton, as an inspection fee. Upon the receipt of such request and the prescribed inspection fee, it is the duty of the commissioner of agriculture to issue tags to the person applying for the same, "who shall attach a tag to each bag, barrel, or package thereof, which, when attached to said package, shall be prima facie evidence that the seller has complied with the requirements of this chapter." This has a dual purpose: .(a) to raise revenue to cover the costs of inspection; (b) to prescribe a rule of evidence under which it may be shown prima facie that the seller has complied with the requirements of the law. By making it a duty to pay inspection fees, and to place tax tags on the separate parcels, it was not designed to make sales of fertilizer unlawful if such tags were not so attached to the parcels. The question as to the legality of sales of fertilizers is dealt with in other portions of the statute. In the Civil Code, § 1794, it is declared that "it shall not be lawful for any manufacturer or company . . to offer for sale, in this State, any fertilizer . . that has not been registered with the commissioner of agriculture as required by this chapter. The fact that the purchaser waives the inspection and analysis thereof shall be no protection to said party selling or offering the same for sale." This provision of the law refers to the failure to register the fertilizer with the commissioner of agriculture, which was a matter required to be performed in advance of the issuance of the tax tags, and had no reference whatever to tags. Another provision of the statute is found in the Penal Code, § 643, which declares that: "Any person selling or offering for sale any fertilizers . . without first having complied with the provisions of law as to the inspection, analysis, and sale of commercial fertilizers . . shall be guilty of a misdemeanor." Neither has this any reference to the subject of attaching tax tags to the separate parcels of fertilizer.

It thus appears that under the act of 1901, supra, there is one provision for the protection of users of fertilizers, to the effect that contracts for the sale thereof shall be unlawful unless the fertilizer has been duly registered before the sale; and another to the effect that a person selling or offering for sale, without having complied with the provisions of law in regard to inspection, analysis, and sale of fertilizers, shall be .punished as for a misdemeanor. But there is no provision to the effect that the contract shall be void, or that any penalty shall be imposed, if the seller should fail to attach tags to the separate parcels. It is manifest that the mere failure to attach tax tags to the separate parcels of fertilizer will not render the contract of sale unlawful. In this connection see *Toole* v. *Wiregrass Development Co.,* ante, 57 (82 S. E. 514); *Hillis* v. *Comer,* 13 *Ga. App.* 214 (78 S. E. 1107); *Arlington Oil & Guano Co.* v. *Swann,* 13 *Ga. App.* 562 (79 S. E. 476). As the defendant assumed the burden of proof, and offered no other evidence in defense to the action against him, the verdict was unauthorized, and a new trial should be granted.

The ruling here made does not in any way conflict with the decision in *Allen* v. *Pearce,* 80 *Ga.* 417 (7 S. E. 82), which was based on the act of 1877 (Acts 1877, p. 37, Code of 1882, § 1553 (a)), which required that the analysis of fertilizers be stated on the "brand tags," and made it a misdemeanor for manufacturers and dealers to offer fertilizers for sale or distribution without having a brand tag attached to the parcels. Nor is it in conflict with the decisions in *Holt* v. *Navassa Guano Co.,* 114 *Ga.* 666 (40 S. E. 735), and *Zipperer* v. *Doyle,* 124 *Ga.* 895 (53 S. E. 505), both of which were based on the act of 1891 (Acts 1890-91, p. 143, Political Code of 1895, §§ 1563, 1564, 1570), which contained provisions similar to those in the act of 1901, making it the duty of the dealer, before offering fertilizer for sale, to attach tax tags to the separate parcels (Civil Code of 1910, §§ 1793, 1794), and a further provision that all sales made "in any other manner than as required in this article shall be absolutely void." Political Code of 1895, § 1570. This last section was not carried into the Code of 1910, but, as seen above, a substitute therefor was made, merely condemning the sale where there was no registration. Civil Code (1910), § 1794.

*Judgment reversed. All the Justices concur, except Lumpkin, J., dissenting.*