### 5426. SWIFT v. MOORE.

The rejected amendments to the defendant's answer did not present a valid defense. The rulings in admitting and excluding testimony were free from error; and the evidence demanded the verdict directed by the court.

DECIDED SEPTEMBER 23, 1914.

Complaint; from city court of Atlanta—Judge Reid. November 6, 1913.

*C. T. & L. C. Hopkins,* for plaintiff in error.

*Stiles Hopkins, Jesse M. Wood,* contra.

RUSSELL, C. J. The action was brought by Moore, a real-estate dealer, to recover $1,275 commissions from Mrs. Swift. The suit was based on (1) express contract, (2) quantum meruit for value of services rendered, and (3) on a custom prevailing in the city of Atlanta, under which, in the absence of a contract, a real-estate dealer receives 5 per cent. on the first $2,000, and 2½ per cent. on the balance. There was attached to the petition a copy of the contract with Corey, Blount & Co., the proposed purchasers of Mrs.

Swift's lot, and also a letter written by L. C. Hopkins, Esq., as attorney for Mrs. Swift. The defendant filed an answer denying all liability on each and every count, and later filed several amendments alleging various defenses. However, there was no allegation that the contract was obtained by fraud, committed either as to Mrs. Swift or as to Corey, Blount & Co.; it was admitted in the answer that Mrs. Swift signed the contract attached to the petition, and the contract and Mr. Hopkins's letter both bore the same date,—March 22, 1911,—and upon the contract was an entry practically incorporating as a part of the contract the descriptive terms employed as to the lot in Mr. Hopkins's letter. The defendant did not plead that Mr. Hopkins was not authorized to act in writing the letter, or seek in any way to disavow the statement made by him in the letter written in her behalf. The defendant objected to the introduction of this contract without formal proof. The grounds of the objection were that it was not impressed with the seal of the corporation or proved to have been executed; and it was further insisted that there was no evidence that the amount "$1,275" had been inserted at the time the contract was signed. The plaintiff then introduced the original letter, a copy of which was attached to the original petition as "exhibit B," and also the entry on the back of the original contract, signed by Corey, Blount & Co., a copy of which was also an exhibit to the petition. The ruling as to the admissibility of the contract is the subject of the first exception in the bill of exceptions.

In view of the fact that the execution of the contract was admitted by the defendant, and it was not alleged in the answer that the defendant had declined to sell the lot because of any lack of authority on Corey's part to sign the contract in behalf of Corey, Blount & Co., the court did not err in admitting the contract. Construed with the letter of Mr. Hopkins, the contract and the letter were unambiguous, as the court correctly held; and for this reason the court properly excluded parol evidence as to prior negotiations between the parties which led up to and culminated in the contract. No rule of law is better settled than that which declares that parol evidence is inadmissible to contradict or vary the terms of a written instrument. Of course, as is insisted by counsel for the plaintiff in error, parol evidence is sometimes admissible to show the understanding and intention of the parties in entering into

the contract, but this exception to the general rule applies only when the writing is ambiguous. According to the terms of the contract, Corey agreed to buy and Mrs. Swift agreed to sell a "lot 70x160 feet, on west side of Peachtree street, to a 10-foot alley, known as 322 Peachtree street, being the north part of said Peachtree frontage of said Todd property." From this description it was settled, beyond the intervention of parol testimony (except on account of fraud), that Peachtree street runs in a northerly and southerly course, and that the lot in question was on the west side of the street. Its dimensions, "70x160 feet," were fixed, and the statement that the lot was "70x160 feet" to an alley, must be assumed to be a statement that the alley was reached at the *end* of the 160 feet, and therefore lay in the rear of the lot, if Peachtree street be taken as the front. But the contract was accepted by the purchaser with the conditions contained in the letter of Mr. Hopkins of even date, which definitely located the alley. An alley was still at the back of the lot, coterminus with the lines 160 feet in length, and the reference in the contract to the 10-foot alley was explained. Instead of the alley being one of the boundaries of the lot, at the rear thereof, it was to commence at a point on the rear and extend thence to West Peachtree street. But this amendment in the terms of the purchase was accepted by Corey, Blount & Co., as appears from the entry on the contract, and there is no ambiguity in the description or location of the alley as finally agreed upon. The statement in Mr. Hopkins's letter is: "There will be an alley dedicated, beginning at the southwest corner of the lot to be sold to Messrs. Corey, Blount & Co., at about the corner of this lot and the lot where the Mitchell-Lewis garage is now being erected; the alley extending thence westerly straight to West Peachtree street. Messrs. Corey, Blount & Co. and their assigns will be given the right to use this alley."

The plaintiff in error complains that, due to misrepresentations of one Wood, who appears to have been employed by the plaintiff upon a commission basis, the trade fell through, and that this was due to the fact that Wood represented to Corey, Blount & Co. that the 10-foot alley was to run in a southwest direction, from the rear of the lot, to Peachtree street. All of Corey's answers to the interrogatories, upon this point, were excluded by the court upon the plaintiff's objection, and we think they were correctly excluded, be-

cause, no matter what may have been the statements made by Wood, prior to the time the contract was signed by Corey, Blount & Co., Mr. Hopkins's letter clearly and definitely contradicted any previous representations that might have been made by Wood or anybody else, and the contract was not only accepted after the statement in Mr. Hopkins's letter was made, but the parties took the precaution to enter a statement of this agreement and understanding upon the very contract itself. So there was an unambiguous contract, embodied partly in the letter and partly in the original agreement of purchase, which definitely described in every respect the property to be purchased, including the location of the alley. It is argued that as Peachtree street does not run directly north and south, the lot could not have a southwest corner; and perhaps, speaking with precise exactness, this statement is true; but by mentally applying the compass, the court and the jury, as well as the parties, were obliged to know that one of the corners would be approximately the southwest corner, and that to only one of the corners could that designation be applied in any correct sense. The location of this particular corner was further fixed by the reference in the letter to the Mitchell-Lewis garage, and by the fact that this proposed alley was to run in a direct straight line to West Peachtree street. Even if there had been ambiguity in the description, the court did not err in excluding the testimony which the defendant sought to introduce, for it would not have shed light upon any ambiguity in the expression used in the contract. Mr. Hopkins's letter said that the alley was to extend to West Peachtree street, and the testimony which the defendant sought to introduce was offered in an effort to show that Wood had represented it to be an alley which was to begin at Peachtree street, on the south side of Mrs. Swift's property and between that property and the Mitchell-Lewis garage, running through to West Peachtree street. When Corey accepted, as an amendment to the contract, the statement of Mr. Hopkins's letter that the alley was to begin at the southwest corner of the lot (the subject of the contract in suit) and of the Mitchell-Lewis garage, and to run thence to West Peachtree street, he should have known, and was obliged to have known, that the alley did not begin on Peachtree street, for the corner of the lot there would have been so approximately southeast as to be properly thus described in common parlance. On the plat which all

17

parties agreed to be a correct representation of the lot, the course of Peachtree street is not shown, but West Peachtree street runs approximately north and south. For this reason the lot in question, fronting on Peachtree street, has, as before stated, no corner which is exactly a southwest corner, but there is one corner which can properly be said to be south-and-west, another south-and-east, a north-and-east corner, and another north-and-west. As shown by the representation of the points of the compass on the agreed plat, a corner at or near the rear corner of the Mitchell-Lewis garage would be the south-and-west corner. The south-and-west corner of the lot in controversy, when aided by the statement that it was next to the Mitchell-Lewis garage, identifies that corner as the same as the "southwest corner" described in Mr. Hopkins's letter.

The defendant offered an amendment to her answer, setting up that the contract declared upon in the petition, and the letter of Mr. Hopkins made a part thereof, were ambiguous, because they did not definitely locate the alley, and that the location of the alley was an important and material element in the consideration of the trade, upon the part of Corey, Blount & Co.; and it was further alleged in the proposed amendment that Wood, without the defendant's knowledge or consent, represented that the alley was to divide the 70-foot lot in question from the property of the Mitchell-Lewis garage, and that the alley would begin on Peachtree street; that she had never had enough property there to sell a 70-foot lot and create a 10-foot alley at that point; and that, as there had been no meeting of minds between her and Corey, Blount & Co. as to the property, there was no legal contract and neither party was bound thereby; and that whether the contract and the letter of her attorney to Wood were ambiguous or not, there was a mutual mistake, brought about by the statements of Wood, unauthorized by her and not known to her, and that for this reason there never was any binding or enforceable contract between her and Corey, Blount & Co., and that the transaction was only "declared off" when it was ascertained in good faith that no contract had ever been consummated. The defendant offered this amendment in defense of any liability either to Wood or the plaintiff. The court refused to allow the amendment, although the defendant's counsel stated that, in connection with the amendment, he desired

to offer anew the interrogatories of the witness D. W. Corey, which the court had previously excluded and to which we have already referred.

We are of the opinion that the contract and the letter, in the absence of any attack on the ground of fraud used in procuring them, necessarily excluded the amendment, and that it was properly rejected by the court. The allegations of the amendment could not have been established except by parol proof and in violation of the principle that all the antecedent negotiations between the parties are presumed to have been merged in and concluded by a written contract freely entered into.

A letter was tendered by the defendant, written by D. W. Corey to J. L. Hopkins & Sons, in which Corey stated that his understanding was that the alley was to commence on Peachtree street, and that Wood had stated to him that this was the case, and that it was only after the papers had been signed that it developed that the Peachtree frontage was only 70 feet, after taking off 50 feet for the garage. The letter contains several propositions for resale which Corey had in mind, and concludes with a statement that Wood had offered him the property a number of times and had always stated that the entire property consisted of 130 feet (frontage). We think the court properly sustained the objection to the effect that this letter was a self-serving declaration, and its contents immaterial and irrelevant, as well as the controlling objection that the facts set up in the letter could not be proved by the introduction of the letter, but that any proof as to the matters therein stated would have to come from the sworn testimony of Corey as a witness.

The court declined to allow the defendant to prove by the tax-collector of Fulton county that the name of Corey, Blount & Co. did not appear in the returns on the tax digest of Fulton county for the years of 1911 and 1912. Counsel for the defendant stated that the purpose of the question was to show that Corey, Blount & Co. returned no property for taxation, and thus throw light on the question as to whether Corey, Blount & Co. were able to comply with their contract. The fact that Corey, Blount & Co. did not return any property for taxation might have been relevant as corroborative of other testimony, to the effect that they had no property and were not able to comply with their contract attached to the

petition, but the solvency of Corey, Blount & Co. was not in issue, for unless the contract could be avoided and its effect removed from the case, Mrs. Swift had waived any objection as to the solvency of the purchasers, by accepting them herself when she signed the contract. *Fenn* v. *Ware & Owens,* 100 *Ga.* 563 (28 S. E. 238). Whether Wood tried to sell the property for the defendant after the trade was declared off with Corey, Blount & Co. was clearly immaterial and irrelevant to the issue before the court, and the court did not err in declining to allow the defendant to answer a question seeking to elicit a statement to that effect. The defendant had not denied that she had signed the contract. She did not deny that she withdrew from the contract with Corey, Blount & Co. by the mutual consent of both parties, and it would have illustrated nothing on the question as to her liability to Wood or Moore for compensation for services in making the sale to Corey, Blount & Co. It would not follow, from the fact that Wood had tried to sell the property again, after the defendant and Corey, Blount & Co. had called the trade off, that Wood had not previously procured a valid contract of purchase, and that he had not procured a purchaser ready, able, and willing to buy upon the terms proposed by the defendant, at the time she entered into the contract with Corey, Blount & Co. Likewise, the fact that no one in behalf of Corey, Blount & Co. ever called on the defendant for the title papers could not have illustrated anything, unless Mrs. Swift had first denied the execution of the contract. And Corey's plans for the subdivision of the property were likewise wholly immaterial; and for that reason the court did not err in repelling testimony offered on the part of the defendant to the effect that Corey had told the defendant that he was expecting to take half of the property, that Mr. Wood was attempting to sell the other half, and that if Wood succeeded in selling the other half he (Corey) would take the first half, and that he would not be able to take but half of it. As previously stated, the question of Corey's ability to pay for the property had been foreclosed by the defendant's waiver of this point when, in signing the contract, she accepted Corey, Blount & Co. as a purchaser. Any evidence upon the point of Corey's inability to pay for the property was irrelevant under the defendant's admission that she had signed the contract.

There was no error in sustaining the motion to exclude a part

of the letter of April 11, 1911, addressed by the defendant's attorneys, J. L. Hopkins & Sons, to Percy Wood. The contract was made on March 22, 1911. It was immaterial what Hopkins & Sons may have written to Wood on April 11 or thereafter; but it was proper to admit the letter of Hopkins & Sons to Corey, in which, in behalf of the defendant, they stated that they were willing to call the entire matter off. The fact that they stated that they enclosed a copy of a letter written to Wood was immaterial, as higher proof that they did enclose such a letter was obtainable; but their statement that "Mrs. Swift has decided, in view of existing conditions, to withdraw this property from the market at present" was, if the letter was genuine, a statement of the defendant, through her counsel, of her determination to withdraw from the contract. The purpose of the letter written to Corey by J. L. Hopkins & Sons, which the court excluded, was to explain the reason for Mrs. Swift's withdrawal. In this Corey was doubtless interested, but it was a matter of no concern to the plaintiff, who would be entitled to his commissions if he had made a sale to Corey, notwithstanding Corey, for good and sufficient reasons, might be willing to release the defendant from her contract to sell.

Upon the conclusion of the evidence the court directed a verdict for the plaintiff for $1,275 as principal, and $228.01 interest to date, and exception is taken to the direction of the verdict. This court has always borne in mind that the section of the code which permits the court to direct a verdict had its origin in rulings of the Supreme Court in which the direction of a verdict is assumed, prima facie, to be error, but must be held to be harmless error where the jury could not lawfully have found any other verdict than that which was returned. The present case fits the old rule: "The better practice is to let the jury retire, and not to direct a verdict; but if the case be perfectly clear on the facts, the plaintiff in error is not hurt, and the case will not be sent back, because it could not change the verdict." *Hobby* v. *Alford,* 73 *Ga.* 791 (4). See *Davis* v. *Kirkland,* 1 *Ga. App.* 5 (58 S. E. 209).

The defendant having admitted the execution of the contract as pleaded, she was bound to pay the plaintiff the stipulated commissions, unless she pleaded and proved a good defense in avoidance of the contract. She could not plead the inability of Corey, Blount & Co. to buy and pay for the lot in question, because the contract

evidenced her acceptance of Corey, Blount & Co. as purchasers. For the reasons already stated, in discussing the court's rulings upon the evidence, she could not avoid the contract upon the ground that there was a mutual mistake on the part of the parties to the contract, or by reason of a salesman's misrepresentations; for, construing the contract and the letter of Mr. L. C. Hopkins together, there was no ambiguity. Nor could she avail herself of the defense that the purchaser refused to buy the property, for it came out in the testimony, without dispute, that she, of her own volition, released the purchaser from the contract. Neither the plaintiff nor his agent consented to the abrogation of the contract between Corey, Blount & Co. and the defendant. The salesman, Wood, denied that he either agreed or had authority to agree that the contract be set aside; and, regardless of his authority to annul the trade, the defendant, when on the stand, did not contradict Wood's testimony, nor was there any evidence whatever in dispute of it.

The amendments, for reasons already stated, were properly disallowed; but from what is developed by the statement of counsel in offering the amendments, and testimony in support thereof, it is clear that the amendments did not present any good defense, and the testimony was not germane to the real issue.

In a suit brought to recover commissions for the sale of real estate there can only be three questions: (1) Was there a contract under which the real-estate dealer was authorized to act for the defendant? (2) Did he perform the service? (3) Has he received his compensation? A fourth question may enter into the case, where it is claimed that the real-estate dealer or agent consented to the abrogation or rescission of the contract; but, as already stated, that question did not enter into this case, for the plaintiff's witnesses swore positively that they were not consulted and had no part in the abrogation of the contract, and there is no testimony in conflict with this statement.

Considerable stress is laid by the learned counsel for the plaintiff in error on the fact that Wood, the actual salesman who brought about the contract, had not registered and paid the tax required of real-estate dealers in accordance with sections 971 and 978 of the Civil Code. Under the rulings of this court in *Ford* v. *Thomason*, 11 *Ga. App.* 359 (75 S. E. 269), and *Horsley* v. *Woodley*, 12 *Ga. App.* 456 (78 S. E. 260), an inquiry as to whether Wood was an

independent dealer or a mere employee of the plaintiff might be pertinent; but since the ruling of the Supreme Court in *Toole* v. *Wiregrass Development Co.*, 142 *Ga.* 57 (82 S. E. 514), inquiry into any phase of the plaintiff in error's contention upon this point would be unnecessary. Under the ruling in the *Toole* case, supra, the validity of the contract involved in the present case is unaffected by the failure of Moore or Wood to register, or to pay the tax required by law. The legality of the contract is not affected by the real-estate dealer's failure to comply with a requirement in which, as a revenue measure, only the State is concerned.

After careful consideration of the various exceptions, and a thorough investigation of the record, we are satisfied that it discloses no error which affords the plaintiff in error ground for complaint.

    *Judgment affirmed. Roan, J., absent.*