## 13684. SOUTHERN FLOUR AND GRAIN COMPANY v. PILLSBURY FLOUR MILLS COMPANY.

1. The false billing of goods in order to obtain a lower freight rate than that actually carried by the goods shipped, though expressly made a misdemeanor by the interstate-commerce act, does not vitiate a contract of sale entered into between the person so violating the act and a third person; and a plea setting up such facts in defense to a suit for a breach of the contract was properly stricken on demurrer.
2. Grounds 1 and 2 of the amendment to the motion for a new trial cannot be considered by this court, because: (a) "In order for the exclusion of oral testimony to be considered as a ground of a new trial, it must appear that a pertinent question was asked, and that the court ruled out the answer, and that a statement was made to the court at the time, showing what the answer would be; and that such testimony was material, and would have benefited the complaining party." *Griffin* v. *Henderson,* 117 *Ga.* 382 (2) (43 S. E. 712). (b) "Where exclusion of testimony is complained of in a ground of a motion for a new trial which is silent as to the objection to the testimony and as to whether the trial judge excluded it upon his own motion, the ground will not be considered by this court." *Davis* v. *State,* 26 *Ga. App.* 485 (2) (106 S. E. 309) and cit. See also *Avery* v. *Graham,* 26 *Ga. App.* 161 (3) (105 S. E. 708). (LUKE, J., does not agree to the principle last quoted.)
3. "A ruling of the court in striking a plea cannot be made the ground of a motion for a new trial." *Methodist Episcopal Church South* v. *Dudley Sash &c. Co.,* 137 *Ga.* 68 (3) (72 S. E. 480), and cit. Under this ruling the 6th and 7th grounds of the amendment to the motion for a new trial cannot be considered.
4. A charge should be relevant and so adjusted to the pleadings and the evidence as not to inject any principle or theory not thus authorized. *McConnell* v. *Slappey,* 134 *Ga.* 95 (7) (67 S. E. 440); *Peagler* v. *Davis,*

143 *Ga.* 11 (6) (84 S. E. 59, Ann. Cas. 1917A, 232); *Atlantic Coast Line R. Co.* v. *Arant,* 143 *Ga.* 561 (85 S. E. 709); *Georgia Cotton Oil Co.* v. *Jackson,* 112 *Ga.* 620 (37 S. E. 873). Under this ruling there is no merit in grounds 8 and 9 of the amendment to the motion for a new trial, which complain of the refusal of the court to give in charge certain requested instructions.

5. None of the other grounds of the amendment to the motion for a new trial requires a reversal of the judgment.

6. The evidence authorized the verdict, the amount of which this court cannot say was excessive, and for no reason assigned was it error to deny a new trial.

DECIDED FEBRUARY 20, 1923. REHEARING DENIED MARCH 1, 1923.

Action for breach of contract; from Fulton superior court — Judge George L. Bell. April 15, 1922.

Application for certiorari was denied by the Supreme Court.

*Jones, Evins & Moore, W. A. Sutherland,* for plaintiff in error.

*Mayson & Johnson,* contra.

LUKE, J. Only the first headnote needs elaboration. Pillsbury Flour Mills Company of Minneapolis, Minn., sued the Southern Flour & Grain Company of Atlanta, Ga., for the alleged breach of four contracts for the purchase of wheat feed. With the exception of small items upon which damages were sought for the differences between the contract price and the market price at the time and place of delivery, the damages claimed were for the difference between the contract price of the wheat feed and its price on resale. The first of these contracts, dated May 6, 1920, was for 150 tons of " Daisy Red Dog Feed " at $79, f. o. b., Atlanta, Ga., draft attached, " time of shipment within 60 days;" the second, dated May 14, 1920, was for 150 tons of " Daisy," at $79, f. o. b., Atlanta, Ga., draft attached, " time of shipment within 90 days;" the third, dated May 15, 1920, was for 200 tons of " Daisy," at $79, and 200 tons of " A Mids," at $75, f. o. b., Atlanta, Ga., draft attached, " shipment scattered within 90 days;" and the fourth, dated May 17, 1920, was for 100 tons of " Daisy," at $80, and 100 tons of " A Mids," at $76, f. o. b., Atlanta, Ga., draft attached, " shipment within 90 days seller's option."

The defendant tendered a plea and several amendments thereto which alleged, in substance, that the wheat product that the defendant contracted to purchase from the plaintiff, and which was shipped from Minneapolis, Minn., to Atlanta, Ga., was a low grade of flour called " Red Dog;" that this flour carried a higher freight

rate than "wheat feed;" that it was stamped, tagged, billed, and invoiced as "X X Daisy Wheat Feed," in order that a lower freight rate might be procured; that this was a direct violation of section 10, paragraph 3, of the interstate-commerce act; that the product was all shipped to Atlanta with drafts to be taken up by the purchaser; that before the goods reached Atlanta and were ready for delivery to the defendant, the plaintiff informed the defendant that they were branded "Wheat Feed" instead of "Red Dog" to avoid paying the legally published tariff rate on "Red Dog Flour;" that had defendant taken up the bills of lading and secured the goods, he would have been directly aiding the shipper in his unlawful design to violate the above act; and that the defendant was therefore relieved from all obligation to accept any of the wheat feed so shipped. That portion of the interstate-commerce act alleged to have been violated by the plaintiff is as follows: "Any person, corporation, or company, or any agent or officer thereof, who shall deliver property for transportation to any common carrier subject to the provisions of this act, or for whom as consignor or consignee any such carrier shall transport property, who shall knowingly and wilfully, directly or indirectly, himself or by employee, agent, officer, or otherwise, by false billing, false classification, false weighing, false representation, of the contents of the package or the substance of the property, false report of weight, false statement, or by any other device or means, whether with or without the consent or connivance of the carrier, its agent, or officer, obtain or attempt to obtain transportation for such property at less than the regular rates then established and in force on the line of transportation; or who shall knowingly and willfully, directly or indirectly, himself, or by employee, agent officer, or otherwise, by false statement or representation as to cost, value, nature or extent of injury, or by the use of any false bill, bill of lading, receipt, voucher, roll account, claim, certificate, affidavit, or deposition, knowing the same to be false, fictitious, or fraudulent, or to contain any false, fictitious, or fraudulent statement or entry, obtain or attempt to obtain any allowance, refund, or payment for damage or otherwise in connection with or growing out of the transportation of or agreement to transport such property whether with or without the consent or connivance of the carrier, whereby the compensation of such carrier for such trans-

43

portation, either before or after payment, shall in fact be made less than the regular rates then established and in force on the line of transportation, shall be deemed guilty of fraud, which is hereby declared to be a misdemeanor, and shall upon conviction thereof in any court of the United States of competent jurisdiction within the district in which such offense was wholly or in part committed, be subject for such offense to a fine of not exceeding five thousand dollars or imprisonment in the penitentiary for a term of not exceeding two years, or both in the discretion of the court: provided, that the penalty of imprisonment shall not apply to artificial persons."

The plaintiff demurred to this plea, on the ground that it constituted no legal defense to the action, and that, even if the product shipped was billed contrary to the statute pleaded, the plea failed to show that such billing had any effect upon the breaching of the contracts by the defendant. The court sustained the demurrer, and the defendant excepted pendente lite.

The alleged false billing of the goods by the plaintiff in order to obtain a lower freight rate than that actually carried by the product shipped was no defense to the instant suit for the breach of the contracts of purchase, and the court did not err in sustaining the plaintiff's demurrer to the plea and to the amendments thereto. The interstate-commerce act, alleged to have been violated by the plaintiff, makes penal a violation of regulations governing shipments and brands, but it does not provide that contracts made by persons failing to comply with the act shall be void and unenforceable. In the case of *Toole* v. *Wiregrass Development Co.,* 142 *Ga.* 57 (82 S. E. 514), it was held: " Under a statute passed for the purpose of raising revenue, which provides that every person or firm engaged in the business of buying or selling real estate on commission shall pay the sum of ten dollars for each county in which he or they may conduct such business, and that before such person shall be authorized to open up or carry on such business they shall go before the ordinary of the county in which they propose to do business and register their names and the business they propose to engage in, the place where it is to be conducted, and shall then pay their tax to the collector, and that any person failing to comply with the foregoing requirements shall be guilty of a misdemeanor, but which does not provide that the contracts made by

such persons failing to comply with the statute shall be void and unenforceable, it is not a defense to a suit brought by such person selling or buying real estate on commission, to recover commissions on sales of real estate made by him, that he had failed to pay the tax and register as required by the statute." In the case of *Planters Fertilizer Co.* v. *Wheeler,* 142 *Ga.* 153 (82 S. E. 564), it was held: "Under the act approved December 18, 1901 (Acts 1901, p. 65), embodied in the Code of 1910, a contract for the sale of commercial fertilizer is not illegal merely because the seller omits to attach tax tags, as provided for in the act, to the separate sacks in which the fertilizer is contained. Accordingly, where, in a suit on a promissory note given for the purchase-price of fertilizer, the defendant admitted in his plea the execution of the note and assumed the burden of proof, he could not avoid a recovery merely by showing that tags were not attached to the separate parcels thereof." In *Loyd* v. *Pollitt,* 144 *Ga.* 91 (3) (86 S. E. 233), it was held: "A promissory note given in payment of the premium upon a life-insurance policy is not void and unenforceable on the ground that the agent for the company, ' who received the note for the premium, had not registered and paid the State his license tax.' " In Merchants Cotton Press &c. Co. *v.* Insurance Co., 151 U. S. 368 (14 Sup. Ct. 367, 38 L. ed. 195), it was held: " There is nothing in the interstate-commerce law which vitiates bills of lading, or which, by reason of an allowance of a rebate to the agents of the owners or consignees of goods, if actually made, would invalidate the contract of affreightment or exempt a railroad company from liability on its bills of lading." See also, to the same effect, Harris *v.* Runnels, 53 U. S. 79 (13 L. ed. 901); Niemeyer *v.* Wright, 75 Va. 239 (40 Am. R. 720, and cases cited); *Fisk* v. *Wimburn,* 143 *Ga.* 30 (84 S. E. 57); *Roberts* v. *Martin,* 15 *Ga. App.* 205 (2) (82 S. E. 813); *Swift* v. *Moore,* 15 *Ga. App.* 254, 263 (82 S. E. 914), and cit.; *Rhodes* v. *Elberton &c. Ry. Co.,* 16 *Ga. App.* 426 (85 S. E. 611); *Fletcher* v. *Armour Fertilizer Works,* 18 *Ga. App.* 139 (88 S. E. 916).

It follows from what has been said, and the authorities cited, that while the interstate-commerce act declares that one who falsely bills goods in order to obtain a lower freight rate than that actually carried by the goods shipped is guilty of a misdemeanor, the act does not specifically or by necessary implication declare

contracts of sale between a shipper violating the provisions of the act and third persons void because of such violation; and, this being true, the plea and amendments thereto setting up that the plaintiff was entitled to recover for a breach of the contracts sued upon, because it had not complied with the provisions of the act, did not constitute a legal defense to the suit, and the court properly sustained the demurrer interposed thereto.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*