35724. EVERGREEN MEMORY GARDENS, INC. *v.* BLYTHE.

CARLISLE, J. 1. The general grounds of a motion for new trial which are not argued in this court either orally or in the brief of counsel for the plaintiff in error, and upon which there is no general insistence, will be treated as abandoned.

2. Where, in an action brought solely for the breach of a special contract in writing, by the terms of which the plaintiff was for the period of one year to perform designated services for the defendant at a specified remuneration, it appears that the defendant pleaded as its defense that, after having acted under the special contract for a period of approximately seven months, the plaintiff and the defendant by mutual agree-

ment waived, abandoned, and rescinded the special contract and entered into a new agreement, it is error such as to require the grant of a new trial for the trial court to charge the jury: "Whether or not, gentlemen, a rescission was had in this case by mutual agreement of the parties is a matter for you to determine. If you determine that there was a rescission of the contract it would be up to you to determine the date upon which that rescission was effective. And, gentlemen, if you determine that the contract was rescinded, you would then look to a new agreement which they contended was had, and determine, gentlemen, whether or not under the new agreement, if there was a rescission, any indebtedness is due by the defendant to the plaintiff upon that new agreement." The action was brought solely upon the theory of a breach by the defendant of the special contract in writing, which allegedly had been fully performed by the plaintiff. If the plaintiff was entitled to recover it was upon the special contract in writing. The defenses to the action were that the contract had not been fully performed, and that the contract had been mutually abandoned, waived, and rescinded, and that a new agreement had been entered into. For the trial court to permit a recovery upon the new agreement when it had not been sued upon, injected a theory unauthorized by the pleadings or evidence, which was clearly erroneous. See, in this connection, *Southern Flour & Grain Co.* v. *Pillsbury Flour Mills Co.*, 29 *Ga. App.* 671 (3) (116 S. E. 910), and citations.

3. As the case must be remanded for a new trial under the ruling in division 2, the two remaining grounds of the motion for a new trial are not considered, as the errors assigned therein are such as are not likely to recur on another trial. .

*Judgment reversed. Gardner, P. J., and Townsend, J., concur.*

DECIDED JULY 7, 1955.

*J. Walter Owens, Paul Blanchard,* for plaintiff in error.
*Charles A. Hughey, Harry Dicus,* contra.

Leon W. Blythe brought an action to recover $18,120 from Evergreen Memory Gardens, Incorporated, for an alleged breach of contract. The material allegations of the petition are substantially as follows: (2) On August 15, 1953, the plaintiff entered into a written contract with the defendant for a period of one year, by the terms of which the plaintiff was to act as exclusive sales agent and broker for the defendant in the sale of cemetery lots owned by the defendant.

(3) A copy of the contract is attached to the petition. By the terms of this contract (omitting the formal parts) it was mutually agreed: "1. That the corporation hereby employs the broker [the plaintiff] as its sole and exclusive agent to manage

and sell cemetery lots in the above described lands, subject, however, to the supervision, direction and control of the corporation's board of directors. 2. That the broker accepts such appointment as exclusive sales agent and agrees to devote his time, energy and best efforts to the performance of his duties as such broker. 3. That the broker, as a part of the consideration for this contract, is permitted to use office space for a period of one calendar year, without charge, from the date of the signing of this agreement, said space shall be set aside for the broker in the suite of offices now occupied by the corporation at No. 113½ 12th Street, in the City of Columbus, Georgia. 4. That in full compensation of the broker's services, the corporation shall pay the broker, and the broker shall accept from the corporation, the sum of $10 per lot space sold, it being expressly agreed that there shall be no percentage rate on sales. In addition to said amount, the corporation agrees to execute to the broker a promissory note for the sum of $1,000 payable one year from the date of the signing of this agreement at 6% interest. 5. That the corporation shall keep true and correct books of account in which shall be entered all sales of any of said lots, and all payments made on account thereof, as well as any and all costs and expenses incurred in the maintenance and operation of said property, and such books of account shall be open to the examination and inspection of the broker. 6. That the broker agrees to release the corporation from the terms of this agreement upon 90 days' written notice to the broker that the corporation desires to exercise this option, except that the corporation agrees that in the event it desires to terminate this agreement in this manner, that it will permit the broker to continue in the office space or spaces, without charge, for the period of this agreement. 7. That this agreement shall begin on the date hereof [August 15, 1953], and shall continue for a period of one year thereafter, except as herein provided. 8. That the corporation will furnish to the broker, upon request, a set of salesman's equipment for the use of each salesman of the broker designed expressly for the purpose of selling cemetery lots. 9. That this agreement constitutes a personal contract, which may not be transferred or assigned by the broker without the prior written consent of the corporation."

(4) The plaintiff undertook and devoted his time, energy and

best efforts to the performance of his duties as such exclusive sales agent and broker.

(5) As compensation for his services the plaintiff was to receive the sum of $10 per cemetery lot space sold.

(6) During the period of the contract a total of 1812 cemetery lot spaces were sold.

(7) The plaintiff has repeatedly demanded of the defendant $10 per cemetery lot space sold, which amounts to $18,120, but the defendant refuses to pay this amount due by it.

In its answer as finally amended, the defendant admitted paragraphs 2 and 3 of the petition, generally denied paragraphs 6 and 7, and denied paragraph 4, alleging that the plaintiff failed to give his time and efforts to the performance of his duties under the contract, in that he failed to train salesmen, refused to send in real-estate license applications for salesmen, and threatened that, unless the defendant gave the plaintiff a share in the defendant's business, he would make trouble for the defendant before the Georgia Real Estate Commission. The defendant alleged in its answer also that, for the period from September 2, 1953, to March 17, 1954, the plaintiff received payment of monies in accordance with the terms of the contract in the sum of $3,970.68. Payment in the sum of $1,060 was made on the promissory note given the plaintiff by the defendant in accordance with the contract, and the plaintiff continued to use the office space allotted to him under the contract during the remainder of the contract period. On March 24, 1954, the plaintiff refused a commission check in the amount of $156.50, which covered his commission for the period from March 17 to March 24, and requested that the defendant pay the individual salesmen employed by the plaintiff at that time and pay all commissions earned by such salesmen during the remainder of the contract period, and the defendant did so in accordance with the plaintiff's request. From March 24, 1954, to the end of the contract period, the plaintiff in no way gave any of his time or efforts on behalf of the defendant as he had originally agreed to do, and refused to do anything further as exclusive broker "until he had a new contract." After having entered into the contract set forth in the plaintiff's petition, and before the time of its alleged breach by the defendant, it was mutually agreed between the plaintiff and

the defendant orally that the written contract should be waived, abandoned, and rescinded; and, in consideration of the mutual promises of the parties, the written contract was, on March 24, 1954, waived, abandoned, and rescinded. Although the plaintiff failed and refused to perform any services for the defendant as exclusive broker after March 24, 1954, he agreed to remain as manager-salesman; and, for the period from March 24, 1954, until October 11, 1954, the defendant paid the plaintiff $202.70 as commissions earned as such manager-salesman. During the period from March 24 to May 19, 1954, immediately following certain hearings before the Georgia Real Estate Commission, the plaintiff refused to comply with his broker's contract and to devote his time and efforts to the sale of the cemetery lots, and by such conduct the defendant was practically unable to operate, and lost business.

Upon the trial of the case, the jury returned a verdict in favor of the plaintiff for $3,687.50. The defendant's motion for a new trial, based on the usual general grounds and three special grounds, was denied and it excepted.