## 9042. TERRY *v.* SWIFT & COMPANY.

1. Under sections 3 and 4 of the act of August 22, 1911 (Acts 1911, p. 172; Park's Ann. Code, §§ 1778(c), 1778(d), the publishing of a false or incorrect analysis by branding or by attaching a tag or tags upon the sacks or packages of a commercial fertilizer, and a deficiency of ten per cent. or more below the guaranteed analysis in any one component or ingredient thereof, is a false branding under the terms of the act, entitling the purchaser of such fertilizer to recover the penalty provided by section 3.

2. The penalty provided by section 3 of the act of 1911 is for publishing the false analysis, and one penalty only (plus the shortage) is recoverable by a purchaser for the false publishing of the analysis of any one grade of a fertilizer which he has purchased.

DECIDED DECEMBER 13, 1917.

Complaint; from Webster superior court—Judge Littlejohn. June 15, 1917.

Swift & Company brought suit against Terry on a promissory note given for the purchase of fertilizers. The defendant admitted giving the note, but pleaded that the fertilizers failed to come up to the guaranteed analysis, and claimed on that account a deduction from the purchase-price in the total sum of $821.61. He claimed that fifty-one tons, known as the "Pioneer Brand," fell off more than three per cent. from the guaranteed commercial value, and he asked to recover the twenty-five per cent. penalty allowed by law, plus the shortage, that is, the difference between the guaranteed commercial value and the actual commercial value as found by analysis. In addition to this, on the fifty-one tons he claimed that the actual analysis of the nitrogen constituent fell more than ten per cent. below the guaranteed analysis; and because of this he asked a recovery of an additional penalty of twenty-five per cent., plus the shortage. As to four tons called "Excelsior Top Dresser," he claimed that its actual commercial value fell more than ten per cent. below the guaranteed commercial value; and he asked to recover both penalties, that is, the penalty of twenty-five per cent., plus the shortage, because of the deficiency of more than three per cent. in the commercial value, and also a penalty of twenty-five per cent., plus the shortage, because of the false branding, as allowed under sections 2 and 3 of the act of 1911 (cited in the decision). He claimed further that on the four tons of fertilizer he was entitled to recover the same penalty, plus the shortage, on account of the fact that the actual

analysis of the nitrogen in this fell more than ten per cent. below the guaranteed analysis. The plaintiff conceded a deduction on behalf of the defendant of a total amount of $420.74, representing shortage for the three per cent. deficiency on the fifty-one tons and three per cent. deficiency on the four tons, and also the penalty of twenty-five per cent. for false branding on the four tons. An analysis by the department of agriculture was offered in evidence, and showed that the actual commercial value of the fifty-one tons fell slightly more than three per cent. below the guaranteed value, and also showed that the actual commercial value of the four tons fell more than ten per cent. below the guaranteed value. This analysis also showed that the nitrogen constituent in both of the two fertilizers fell more than ten per cent. below the guaranteed analysis. Upon hearing evidence the court allowed the defendant to set off the amount conceded by the plaintiff, and directed a verdict on the note for $946.78, the balance of principal, and for interest and attorney's fees. A motion for new trial, on the general grounds, was overruled, and the defendant excepted.

*J. F. Souter, J. B. Hudson, Little, Powell, Smith & Goldstein,* for plaintiff in error. *G. Y. Harrell,* contra.

HARWELL, J. (After stating the foregoing facts.) The deduction conceded by the defendant in error and allowed by the court covered the penalties and shortage as allowed by the act of 1911 (Ga. L. 1911, p. 172, § 2), for the differences between the guaranteed commercial value and the actual commercial value as found by analysis, on both fertilizers, and also on the "Excelsior Top Dresser" (the four tons), the 25 per cent. penalty and shortage for false branding under section 3 of that act. This deduction from the purchase-price was in accord with the decision in *Arlington Oil & Guano Co.* v. *Swann,* 13 *Ga. App.* 562 (79 S. E. 476). The act of 1911 (supra) allows to the purchaser twenty-five per cent. of the purchase-price as damages, plus the shortage, when the difference between the actual commercial value and the guaranteed commercial value, by reason of the deficiency in any ingredient, is more than three per cent. Section 3 of this act allows to a purchaser damages in a sum of twenty-five per cent. of the purchase-price, plus shortage, for false branding; and by section 4, ten per cent. below the guaranteed analysis constitutes a false branding. The plaintiff in error insists

that he should have been allowed the penalty, plus the shortage, provided by section 3 of this act, for false branding on the fifty-one tons, because of the ten per cent. deficiency in nitrogen. He also insists that he should have been allowed on the four tons an additional penalty for false branding, because there was a deficiency in them of ten per cent. in nitrogen, and also of ten per cent. in the commercial value. The act of 1911 must be construed with the law as embodied in sections 1771 to 1775, inclusive, of the Civil Code of 1910. If any conflict exists, the act of 1911 must prevail. *Johnson* v. *Southern Mutual Building &c. Asso.*, 97 *Ga.* 622 (25 S. E. 358) ; *Verdery* v. *Walton*, 137 *Ga.* 213, 216 (73 S. E. 390). Section 1772 of the Civil Code (1910) requires the guaranteed analysis on the tag on each bag, barrel, or package to show the valuable constituents of the fertilizer in minimum percentages. Sections 3 and 4 of the act of 1911 read as follows:

"Sec. 3. Be it further enacted by the authority aforesaid, That any manufacturer, manipulator, dealer, or vendor of commercial fertilizers in this State, who publishes by branding or by attaching a tag or tags upon the sacks or packages of fertilizer a false or incorrect analysis of the components and ingredients thereof, shall be liable in law to any and every purchaser of such falsely and incorrectly branded or tagged fertilizer in a sum of twenty-five per cent. of the purchase-price, plus the shortage of such commercial fertilizer.

"Sec. 4. A deficiency of more than ten per cent. below the guaranteed analysis of the fertilizers as published and branded or tagged on the sacks or packages thereof shall be held and declared by the courts of this State to constitute a false and incorrect publishing, branding, or tagging within the intent, purpose, and meaning of this Act."

Thus, section 3 provides a penalty on any manufacturer, etc., who *publishes* by branding or attaching a tag or tags upon the sacks or packages a false or incorrect analysis *of the components and ingredients thereof*. Section 4 says that a deficiency of more than ten per cent. below the guaranteed analysis shall be held a false branding. The question is whether the language of section 4, as to "a deficiency of more than ten per cent. below the guaranteed analysis," has reference to each component or ingredient, or

whether it applies only to the total of these components, or to the total commercial value of these components. The purpose of § 1772, supra, and of the act of 1911, is to inform the purchaser of the percentage of phosphoric acid, nitrogen, and potash, or other components, in each sack. It is well known that these ingredients are used for different purposes in the fertilization of crops. One may be valuable for one plant or one soil, and another valuable for another and different plant or soil. The quantities of each component used would also vary with different conditions of the crops. An intelligent farmer, understanding these matters, buys and uses his fertilizers accordingly. A fertilizer may come up to the total guaranteed percentage, and yet might be entirely unsuited to the purposes for which it was purchased. It was to meet exactly this need of intelligent farming that these acts were passed. The farmer, not being able to analyze for himself, must rely on the analysis as he finds it published. To place on the act the construction insisted upon by defendant in error would destroy one of its purposes. In the interpretation of the act we must look for the intention of the General Assembly, keeping in view the old law, the evil and the remedy, and give it that reasonable construction which will effectuate its purpose as disclosed by the legislative mind. Section 4 does not make a deficiency of a certain percentage of the *commercial value* as used in § 1774, supra, or as used in section 2 of the act 1911, a false branding. If the legislature had intended such, we must presume that it would have said so. It is a publishing of a false analysis of the *components and ingredients* which is penalized, and if it is false as to the nitrogen or any one component, and the deficiency in that constituent amounts to ten per cent., it is a false or incorrect analysis.

We do not think, however, the law means to impose, under section 3, two penalties, though the analysis may show a deficiency of ten per cent. in each of two components, or a deficiency of ten per cent. in one component and also in the commercial value. The penalty is for the act of *publishing* the false analysis. The analysis may be false as to one component or as to several components, but only one penalty is recoverable for the act of publishing the analysis. That, we think, is the correct interpretation of the act. Applying these rulings to the instant case, a fur-

ther penalty of twenty-five per cent., plus the shortage, should have been allowed on the fifty-one tons, amounting to $334.81. The facts in the present record being undisputed, if at the time the remittitur is entered as the judgment of the trial court, the defendant in error will write off from the verdict this amount of $334.81 from the principal sum recovered, and a proportionate amount be written off of the interest and attorney's fees recovered, the judgment will stand affirmed; otherwise, the judgment will be reversed.

*Judgment affirmed, on condition. Broyles, P. J., and Bloodworth, J., concur.*