### GEORGIA FERTILIZER COMPANY *v.* WALKER.

No. 7828. JANUARY 16, 1931.

*Branch & Snow,* for plaintiff in error.

*J. B. Baum* and *Emil J. Clower,* contra.

HINES, J. The Georgia Fertilizer Company, on March 4, 1929, sold to Walker 250 sacks of a fertilizer known as A-P Compound, 10-0-4, for the sum of $505. This company was the manufacturer of this fertilizer. This fertilizer was sold, guaranteed, and branded as containing 10 per cent. of phosphoric acid and 4 per cent. of potash. On March 18, 1929, an inspector of the department of agriculture inspected this fertilizer, and forwarded to the commissioner of agriculture two samples and a report of his inspection in the manner provided in section 1781 of the Civil Code of 1910. The State chemist analyzed one of these samples, and certified the same to the commissioner of agriculture as required in section 1783. This analysis showed that the fertilizer contained 10.13 per cent. of available phosphoric acid and 3.56 per cent. of available potash. The guaranteed commercial value of this fertilizer was $16.20 per ton. Its actual value as shown by the analysis of the State chemist was $15.95, showing a deficiency in the commercial value of 25 cents. Walker brought suit against the company to recover the 25 cents per ton between the guaranteed value and the actual plant food value as shown by this analysis, and to recover the penalty of

25 per cent. of the purchase-price, imposed by sections 2 and 3 of the act of August 22, 1911 (Ga. Laws 1911, p. 172), because this fertilizer was falsely or incorrectly branded, in that the potash content of this fertilizer fell more than 10 per cent. below its guaranteed content. In the note given by Walker to the company for the purchase-price of this fertilizer, Walker had waived all claims, damages, and penalties in case of deficiency, except claim for the actual commercial value of the deficiency, when, and only when, samples were taken in the presence of the seller or his authorized representative from this fertilizer.

The company demurred to the suit, on the following grounds: (1) The petition set forth no cause of action. (2) Plaintiff waived all claims, damages, and penalties in case of deficiency, except the claim for the actual commercial value of the deficiency, when, and only when, such deficiency was ascertained and determined by the State chemist from samples taken from this fertilizer in the presence of the seller or his agent. (3) No sufficient facts are alleged to show that the commercial value of this fertilizer fell more than 3 per cent. below its guaranteed commercial value. (4) It does not appear that there was a deficiency of more than 10 per cent. below guaranteed analysis of the fertilizer. (5) Sections 2, 3, and 4 of the act of August 22, 1911 (Ga. Laws 1911, p. 172), violate art. 1, sec. 1, par. 2, of the constitution of this State, which provides that "Protection to person and property is the paramount duty of government, and shall be impartial and complete," and the due-process clauses of the State and Federal constitutions. (6) Sections 1772, 1781, 1783, and 1785 to 1792, inclusive, of the Code of this State violate the due-process clauses of the State and Federal constitutions, in that (a) these laws seek to make the analysis of the State chemist the arbitrary and conclusive measure of the ingredients and commercial value of said fertilizer, and deny to the defendant the right to rebut the same by evidence; (b) said laws make the certificate of the State chemist evidence of the facts shown therein; (c) they make the analysis of fertilizer other than the one sold by defendant to plaintiff the basis of the determination of the commercial ingredients of the fertilizer, and the measure of defendant's liability; and (d) said laws allow the inspectors to make an arbitrary inspection only of a portion of the fertilizer sold, to determine the ingredients and

commercial value of the whole lot, and to establish the liability of the defendant based on such arbitrary inspection. The judge overruled the demurrer, and the defendant excepted.

■ The plaintiff's cause of action is based upon the act of August 22, 1911 (Ga. Laws 1911, p. 172). This act provides for two penalties, one in section 2 and the other in section 3. Section 2 provides that "if any commercial fertilizer, or fertilizer material, sold in this State, shall prove deficient in any of its ingredients as guaranteed or branded by attaching a tag or tags upon the sacks or packages containing the same, and if, by reason of such deficiency, the commercial value of such fertilizers shall fall more than three per cent. below the guaranteed commercial value of such fertilizers or fertilizer material, then the vendor or vendors of such commercial fertilizer or fertilizers shall be liable in damages to the purchaser or purchasers thereof in a sum of twenty-five per cent. of the purchase-price, plus the shortage of such fertilizer or fertilizers." Ga. Laws 1911, p. 172; 1 Park's Code, § 1778(b). To make a vendor liable to a purchaser for this penalty there must be a deficiency in one or more ingredients of the fertilizer, by reason of which the commercial value of the fertilizer falls more than 3 per cent. below its guaranteed commercial value. To make the seller liable to this penalty there must both be a deficiency in one or more of its ingredients, and the commercial value of the fertilizer must fall by reason of such deficiency more than 3 per cent. below the guaranteed commercial value of the fertilizer. This is the plain meaning of the second section of this act. The guaranteed commercial value of this fertilizer was $16.20. Its actual value as shown by the analysis of the State chemist was $15.95, showing a deficiency in the commercial value of 25 cents. This deficiency does not amount to 3 per cent. of the guaranteed commercial value; and for this reason the plaintiff is not entitled to recover the penalty described in the second section of this act.

This act provides for another penalty, in section 3, as follows: "Any manufacturer, manipulator, dealer, or vendor of commercial fertilizers in this State, who publishes, by branding or by attaching a tag or tags upon the sacks or packages of fertilizers, a false or incorrect analysis of the components and ingredients thereof shall be liable in law to any and every purchaser of such falsely and incorrectly branded or tagged fertilizer, in a sum of twenty-five

■

per cent. of the purchase-price plus the shortage of such commercial fertilizer." Ga. Laws 1911, p. 173; 1 Park's Code, § 1778(c). This section makes the manufacturer, dealer, or vendor of a commercial fertilizer liable to a penalty for a false or incorrect analysis of the components and ingredients thereof. The 4th section of this act defines what constitutes a false and incorrect publishing, branding, or tagging of fertilizer, within the meaning of section 3. The official analysis of this fertilizer shows that it contained 10.13 per cent. of available phosphoric acid, which is .13 per cent. more of that ingredient than was guaranteed. This analysis further shows that this fertilizer contained 3.56 per cent. of available potash, which was .44 per cent. less of that element than was guaranteed. This deficiency in potash was more than 10 per cent. of the guaranteed amount thereof, this amount being 4 per cent. of potash. By reason of this deficiency the plaintiff sued the defendant for 25 per cent. of the purchase-price of the 250 sacks of fertilizer bought by him from the defendant. Does this shortage of potash in this fertilizer constitute a false or incorrect analysis of the components and ingredients thereof? By section 4 of this act such false or incorrect analysis exists whenever there is a deficiency of more than 10 per cent. below the guaranteed analysis of the fertilizer. It is insisted by counsel for the defendant that a deficiency of more than 10 per cent. below the guaranteed analysis of the potash in this fertilizer does not amount to a false or incorrect analysis of the components and ingredients thereof, under sections 3 and 4 of this act. We can not concur in this view. The analysis dealt with in sections 3 and 4 of this act is "an analysis of the components and ingredients" of the fertilizer, and not of the fertilizer as a whole. If a component or ingredient of the fertilizer falls short of the guaranteed analysis, this is a false or incorrect analysis within the meaning of this section. The act provides for a fertilizer as per the guaranteed analysis. The purchaser is entitled to a fertilizer coming up to such analysis. It is well known that the different ingredients of a fertilizer vary in price; and the best elements are the costliest. Potash is one of the best elements of plant food; and it costs more than phosphoric acid. If a high per cent. of phosphoric acid which is much cheaper than potash, could supply a deficiency in the potash content, the fertilizer would be much less costly, and much less valuable. The purchaser

might want a fertilizer composed of potash and phosphoric acid combined in the proportion fixed by the guaranteed analysis. Such a combination is much more valuable as a plant food than if it were composed mostly of phosphoric acid. The purpose of the fertilizer-inspection laws is to inform the purchaser of the percentage of the different ingredients in each sack. So we are of the opinion that the deficiency referred to in section 3 has reference to each component or ingredient; and that a deficiency of more than 10 per cent. below the guaranteed analysis in any one ingredient of the fertilizer is a false or incorrect analysis under the terms' of this section of the act of 1911, and entitles the purchaser of the fertilizer to recover the penalty provided thereby. This is the construction which has been put upon this act by the Court of Appeals, and this decision has stood unchallenged for over 13 years. . *Terry* v.: *Swift,* 21 *Ga. App.* 431 (94 S. E. 658).

■ Sections 2, 3, and 4 of the act of 1911 are attacked as unconstitutional, because they violate art. 1, sec. 1, par. 2, of the constitution of this State, which provides that protection to person and property is the paramount duty of government, and shall be impartial and complete; and the due-process clauses of the State and Federal constitutions. These sections of this statute are not unconstitutional for these reasons, or either of them. *Southern Cotton Oil Co.* v. *Raines,* 167 *Ga.* 880 (147 S. E. 77). An inspection of the record in this court of the case cited will show that the attacks on the act of 1911 were based upon the same grounds upon which it is attacked in this case. So we are committed to the doctrine that our statute, embraced in section 1773 of the Civil Code, making the chemical analysis of fertilizer by the State chemist competent evidence in the courts of this State on the trial of any issue involving the merits of such fertilizer, does not deprive a manufacturer or seller thereof of his property without due process of law, nor deny to him the equal protection of the law. Such analysis must be the official analysis provided for in section 1783 of the Civil Code of 1910, and is only prima facie evidence of the contents of the fertilizer analyzed. *Jones* v. *Cordele Guano Co.,* 94 *Ga.* 14 (20 S. E. 265). It can not be made conclusive. *Southern Cotton Oil Co.* v. *Raines,* 171 *Ga.* 156 (8) (155 S. E. 484). The Supreme Court of Florida has taken the same view of this question, under a statute very similar to the act of 1911. Collins *v.*

Plant, 68 Fla. 338 (67 So. 80); Adams *v.* American Agr. Chem. Co., 78 Fla. 362 (82 So. 850); Fleischer *v.* Virginia-Carolina Chem. Co., 82 Fla. 50 (89 So. 401).

The defendant likewise demurred to the petition in this case upon the ground that sections 1772, 1781, 1783, and 1785 to 1792, inclusive, of the Code of 1910 are unconstitutional and void, because they violate the due-process clauses of the State and Federal constitutions. The first of these sections requires, in part, that "All persons, companies, manufacturers, dealers, or agents, before selling or offering for sale in this State any commercial fertilizer or fertilizer material, shall brand or attach to each bag, barrel, or package the weight of the package, the name and address of the manufacturer, and the guaranteed analysis of the fertilizer, giving the valuable constituents of the fertilizer in minimum percentages only." Section 1781 provides for the inspection of fertilizer by official inspectors, the method of taking samples, and of making report of their acts and doings in these matters to the commissioner of agriculture. Section 1783 provides for the analysis of samples of all fertilizer drawn by the official inspectors and filed with the commissioner of agriculture. None of these sections make the analysis of the State chemist the arbitrary and conclusive measure of the ingredients and of commercial value of a fertilizer; nor do they deny the defendant the right to rebut the same by evidence. They do not make an analysis of fertilizer other than that sold by the defendant to the plaintiff the basis of the determination of the commercial ingredients of the fertilizer, and the measure of defendant's liability. So these grounds of attack on the constitutionality of the sections mentioned are without merit. Section 1783 does make the official analysis of the fertilizer or fertilizer material by the State chemist admissible as evidence in any of the courts of this State on the trial of any issue involving the merits of such fertilizer or fertilizer material; but, as we have seen, this section of the Civil Code of 1910 is not unconstitutional and void for any of the reasons assigned. It only makes the certificate of the official analysis competent evidence, but leaves it to be rebutted or overcome by any competent evidence which may be offered by any party contesting its correctness.

The defendant likewise attacks sections 1785 to 1792, inclusive, of the Civil Code of 1910, upon the ground that they are unconstitu-

tional and void for the same reasons. These sections do not apply to the official analysis with which we are dealing; but have reference alone to the analysis provided for in these sections. The plaintiff does not rely for recovery upon the provisions of these sections. They relate to a private analysis, made at the instance of the purchaser, from samples taken as provided therein. This being so, we are not called upon to deal with their constitutional validity. We may remark, however, in passing, that the provision in section 1790, making the State chemist's analysis therein provided for conclusive, has been declared unconstitutional and void by this court in *Southern Cotton Oil Co.* v. *Raines,* supra.

■ In the note given by the purchaser to the seller of this fertilizer, the former waived all claims, damages, and penalties in case of deficiency in the component parts of this fertilizer, except a claim for the actual commercial value thereof. It is insisted by the defendant that this waiver of all penalties precludes the plaintiff from recovering the penalties imposed by the act of 1911. In *Southern Cotton Oil Co.* v. *Raines,* 167 *Ga.* 880 (supra), this court held that "The penalties under the act of 1911 can not be avoided by showing an agreement between the parties to evade the statute." The ruling in that case was based on the Civil·Code (1910), § 1794. By parity of reasoning the principle of that section was made applicable to any agreement made to shun the penalties provided·by the act of 1911, and thus an evasion of that act. In *Faircloth* v. *DeLeon,* 81 *Ga.* 158 (7 S. E. 640), it was held that "No waiver or undertaking in the contract for the purchase of commercial fertilizers, or in the note given for the price, will bar or estop the buyer from pleading the want of legal inspection, when sued by the seller on such contract or note." By like reasoning, the agreement between the parties will not bar or estop the buyer from pleading a false or incorrect analysis of this fertilizer, when he sues to recover the penalty imposed by the act of 1911. The act of 1911 is a quasi-penal statute. It makes a false or incorrect analysis illegal, and penalizes the seller. The violator of this public law, which makes illegal the sale of fertilizer under a false analysis branded on the sacks or packages containing the fertilizer, can not shun the evil consequences of such false analysis by making terms and conditions by which the buyer waives the penalty for such false analysis. This being so, the waiver in the note given for the purchase-money

of this fertilizer can not be set up by the defendant as a defense to the suit for the recovery of the penalty provided by the act of 1911. Otherwise the provisions of the act of 1911 imposing penalties for the false analysis could be nullified by agreement of the parties. While a person may generally waive or renounce what the law has established in his favor, he can not do so when the waiver affects the public interest. Civil Code (1910), § 10. The power to waive the penalties imposed by the act of 1911 would empower the parties to waive this quasi-penal statute, and thus affect the public interest injuriously.

Applying the above principles, the court did not err in overruling the demurrer. *Judgment affirmed. All the Justices concur.*